UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GORDON SCHIFF** and **CELESTE ROYCE**,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>**U.S. OFFICE OF PERSONNEL MANAGEMENT**; **CHARLES EZELL**, in his official capacity as Acting Director of the U.S. Office of Personnel Management; **U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES**; **ROBERT F. KENNEDY, JR.**, in his official capacity as Secretary of Health and Human Services; **AGENCY FOR HEALTHCARE RESEARCH AND QUALITY**; and **MAMATHA PANCHOLI**, in her official capacity as Acting Director of the Agency for Healthcare Research and Quality,<br><br>        *Defendants*. | Case No. 25-cv-10595-LTS<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**<br><br>*Leave to file excess pages granted on April 16, 2025, ECF 36.* |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

    I.   THE COURT HAS SUBJECT MATTER JURISDICTION ...................................... 1

        A.  Plaintiffs Have Standing ..................................................................................... 1

        B.  Plaintiffs' Claims Are Ripe ................................................................................. 2

    II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............................... 4

        A.  Defendants' Implementation of the EO Violates the First Amendment ........... 4

        B.  Defendants' Implementation of the EO Violates the APA .............................. 6

            1.  Defendants' Implementing Actions Are Final Agency Actions ........... 6

            2.  Defendants' Implementing Actions Are Arbitrary and Capricious ................................................................................................. 7

            3.  The OPM Takedown Directive Exceeds OPM's Statutory Authority ................................................................................................. 8

    III. ABSENT A PRELIMINARY INJUNCTION, PLAINTIFFS WILL SUFFER IRREPARABLE HARM ................................................................................................ 8

    IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION ................................................................................................................ 9

    V.  THIS COURT SHOULD NOT LIMIT THE SCOPE OF ANY INJUNCTIVE RELIEF TO PLAINTIFFS .......................................................................................... 10

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ................................................................................................................ 2

*American Federation of Government Employees, AFL-CIO v. Office of Personnel Management*,
    2025 WL 820782 (N.D. Cal. Mar. 14, 2025) ............................................................................ 6

*American Federation of Government Employees, AFL-CIO v. Office of Personnel Management*,
    2025 WL 996542 (S.D.N.Y. Apr. 3, 2025) ............................................................................... 6

*Asociación de Educación Privada de Puerto Rico, Inc. v. García-Padilla*,
    490 F.3d 1 (1st Cir. 2007) ......................................................................................................... 9

*Association of Administrative Law Judges v. U.S. Office of Personnel Management*,
    640 F. Supp. 2d 66 (D.D.C. 2009) ............................................................................................ 6

*Becker v. FEC*,
    230 F.3d 381 (1st Cir. 2000) ..................................................................................................... 2

*Brox v. Woods Hole*,
    706 F. Supp. 3d 151 (D. Mass. 2023) ....................................................................................... 9

*Christian Legal Society Chapter of University of California, Hastings College of Law v. Martinez*,
    561 U.S. 661 (2010) .................................................................................................................. 4

*Citizens United v. FEC*,
    558 U.S. 310 (2010) .................................................................................................................. 9

*Columbia Riverkeeper v. U.S. Coast Guard*,
    761 F.3d 1084 (9th Cir. 2014) ............................................................................................... 6, 7

*Comcast of Maine/New Hampshire, Inc. v. Mills*,
    988 F.3d 607 (1st Cir. 2021) ................................................................................................... 10

*Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*,
    473 U.S. 788 (1985) ............................................................................................................. 4, 5

*Doctors for America v. Office of Personnel Management*,
    2025 WL 452707 (D.D.C. Feb. 11, 2025) ............................................................................. 6, 7

*Doctors for America v. Office of Personnel Management*,
    No. 25-322 (D.D.C. Mar. 24, 2025) .......................................................................................... 4

*Doe v. Trump*,
   No. CV 25-10135-LTS, 2025 WL 485070 (D. Mass. Feb. 13, 2025) ...................................... 3

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................................................ 3, 9

*Estiverne v. Louisiana State Bar Association*,
   863 F.2d 371 (5th Cir. 1989) ...................................................................................................... 5

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ................................................................................................................ 7, 8

*Fund for Animals, Inc. v. U.S. Bureau of Land Management*,
   460 F.3d 13 (D.C. Cir. 2006) ....................................................................................................... 6

*Hazelwood School District v. Kuhlmeier*,
   484 U.S. 260 (1988) ................................................................................................................ 4, 5

*John Doe No. 1 v. Reed*,
   561 U.S. 186 (2010) ................................................................................................................... 10

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..................................................................................................................... 3

*Louisiana v. Biden*,
   45 F.4th 841 (5th Cir. 2022); ........................................................................................................ 7

*Louisiana v. Biden*,
   543 F. Supp. 3d 388 (W.D. La. 2021) .......................................................................................... 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................................... 1

*Maceira v. Pagan*,
   649 F.2d 8 (1st Cir. 1981) ............................................................................................................ 9

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile
   Insurance Co.*,
   463 U.S. 29 (1983) ....................................................................................................................... 8

*N.Y. Stock Exchange LLC v. SEC*,
   2 F.4th 989 (D.C. Cir. 2021) ........................................................................................................ 6

*Nken v. Holder*,
   556 U.S. 418 (2009) ..................................................................................................................... 9

*Perry Education Association v. Perry Local Educators' Association*,
   460 U.S. 37 (1983) ....................................................................................................................... 5

*Project Veritas Action Fund v. Rollins*,
  982 F.3d 813 (1st Cir. 2020) ............................................................................................. 3, 10

*Ridley v. Massachusetts Bay Transportation Authority*,
  390 F.3d 65 (1st Cir. 2004) ................................................................................................. 4, 5

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  592 U.S. 14 (2020) .................................................................................................................... 9

*Sackett v. EPA*,
  566 U.S. 120 (2012) .................................................................................................................. 7

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) .................................................................................................................. 5

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
  699 F.3d 1 (1st Cir. 2012) ............................................................................................. 3, 9, 10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .................................................................................................................. 3

*Texas v. United States*,
  579 U.S. 547 (2016) ................................................................................................................ 10

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ................................................................................................. 10

*United States v. Stevens*,
  559 U.S. 460 (2010) ................................................................................................................ 10

*Whitman v. American Trucking Associations*,
  531 U.S. 457 (2001) .................................................................................................................. 6

**Statutes**

5 U.S.C. § 1103 .................................................................................................................................. 8

Plaintiffs filed a preliminary injunction motion to stop Defendants from scrubbing their patient-safety research from PSNet in violation of the First Amendment and the Administrative Procedure Act ("APA"). In response, Defendants argue Plaintiffs' claims are not justiciable, but Plaintiffs clearly have standing because the government can repost their articles, and their claims are ripe. On likelihood of success on the merits, Defendants concede that PSNet is a limited public forum and that Plaintiffs' articles were removed based on their viewpoint, which together foreclose any defense to Plaintiffs' First Amendment claim. Defendants rest most of their defense against Plaintiffs' APA claims on the fact that the OPM Memo was labeled "Initial Guidance." But this label neither deprives the agency action of finality nor insulates it from Plaintiffs' *ultra vires* challenge. As for Plaintiffs' arbitrary and capricious claim, Defendants refuse to address caselaw that makes clear an executive order is not a blank check to act without reason. Finally, the ongoing violation of Plaintiffs' First Amendment rights is *per se* irreparable harm and tilts the balance of equities in their favor. Plaintiffs therefore respectfully request that the Court enter their proposed injunction, which is properly crafted to address Defendants' constitutional and APA violations.

## ARGUMENT

### I. THE COURT HAS SUBJECT MATTER JURISDICTION

#### A. Plaintiffs Have Standing

To establish standing, plaintiffs must show that (1) they have suffered an injury in fact; (2) the injury is fairly traceable to the defendants' conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants do not dispute that Plaintiffs satisfy the injury-in-fact and traceability prongs, arguing only that Plaintiffs' injuries are not redressable and that Plaintiffs improperly assert the rights of third parties. Doc. No. 33 at 11–13. Both arguments are incorrect.

Defendants' suggestion that Plaintiffs' injuries are not redressable [1] because the government is "unable" to repost their articles, Doc. No. 33 at 13, is unsupported by the record and contradicted by the government's own briefing. Ms. Shofer's declaration—the sole evidence the government points to for this proposition—attests only that "it is unclear if there will be technical ability to post any new content on PSNet." Doc. No. 33-1 at ¶ 23. The assertion that it is "unclear if" something can be posted is a far cry from establishing the government is "unable to." Moreover, the government elsewhere concedes that "Plaintiffs' articles have not been completely deleted from PSNet but instead put into an archive, *to allow for the possibility of re-posting* if future circumstances warranted." Doc. No. 33 at 25 (emphasis added). Indeed, Defendants rely on the potential for such republication to argue disingenuously that AHRQ's removal is not "final agency action." *Id.*; *see infra* Section II.B.1.

The government's argument that Plaintiffs fail to satisfy the requirements for third-party standing, Doc. No. 33 at 12, is equally unavailing; it mistakes the scope of the remedy Plaintiffs seek for a standing argument they do not make. Plaintiffs are not asserting third-party standing. The scope of Plaintiffs' proposed injunction—which is proper, *see infra* Section IV—is a question of remedy, not standing.

B.   **Plaintiffs' Claims Are Ripe**

Defendants do not—and cannot—contest that Plaintiffs' lawsuit meets both prongs of ordinary ripeness analysis. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Instead, Defendants rely on prudential considerations but fail to acknowledge that such considerations can almost never override courts' "virtually unflagging" obligation to decide live cases and

---

[1] Defendants frame this argument as a redressability argument for purposes of standing, but standing—including redressability—is assessed as of the time a complaint is filed, and Plaintiffs filed their complaint before the government ceased updating PSNet. *See, e.g.*, *Becker v. FEC*, 230 F.3d 381, 389 (1st Cir. 2000). Even framed as a mootness argument, Defendants arguments fail for the reasons described below.

2

controversies within their jurisdiction. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014)); *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 826–27 (1st Cir. 2020).[2]

There is no merit to Defendants' contention that the Court should await the outcome in *Doctors for America* before ruling on Plaintiffs' motion. Defendants do not cite a single case that considers the pendency of a similar action in another jurisdiction as relevant to ripeness. *See* Doc. No. 33 at 14 (discussing cases concerning the ripeness of *pre-enforcement* challenges, which are inapposite). Defendants cite no support for their position because there is none. Particularly where preliminary injunctions implicate constitutional rights, federal courts regularly entertain litigation that presents issues similar to litigation in other districts. *See, e.g.*, *Doe v. Trump*, No. CV 25-10135-LTS, 2025 WL 485070 (D. Mass. Feb. 13, 2025) (preliminarily enjoining President Trump's birthright citizenship executive order after similar injunction was entered in another federal district).

Defendants' suggestion that the hardship of delay to Plaintiffs is "minimal"—to the extent that that is even a proper ripeness consideration at all—is equally unavailing. Doc. No. 33 at 16. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). While the *Doctors for America* parties have briefed their motions for summary judgment, there is no deadline for a decision. In addition, the government argues in *Doctors for America* that any relief may only reach the specific articles raised by those plaintiffs, a list that does not include Dr. Schiff's *Suicide Risk Assessment*. *See* Combined Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. & Expedited Summ. J. &

---

[2] While Plaintiffs meet ordinary ripeness standards, the "relaxation of ripeness requirements" for First Amendment claims makes ripeness especially clear in this case. *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 9 (1st Cir. 2012).

in Supp. of Defs.' Cross Mot. for Summ. J. at 20–21, *Drs. for Am. v. Off. of Pers. Mgmt.*, No. 25-322 (D.D.C. Mar. 24, 2025), Doc. No. 48-1. There is no reason for this Court to conclude that Plaintiffs' claims here are not ripe.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. Defendants' Implementation of the EO Violates the First Amendment

Defendants concede that PSNet is a limited public forum, in which any constitutional restriction of speech must be viewpoint neutral and reasonable. Doc. No. 33 at 23; *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). Defendants do not even attempt to argue that the OPM takedown directive and AHRQ's removal of articles from PSNet are viewpoint neutral, Doc. No. 33 at 23–24, nor could they, Doc. No. 26 at 14–16. Instead, the government attempts to move the well-settled goalposts by arguing that "the requirement of viewpoint neutrality is not absolute." Doc. No. 33 at 23. No case supports that proposition, and the First Circuit has repeatedly held that viewpoint neutrality is a requirement in limited public fora. *See Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004).

The cases the government cites do not save its argument. Doc. No. 33 at 21, 23. *Martinez* expressly "consider[ed] whether [the challenged] policy [wa]s viewpoint neutral," noting that "this aspect of limited-public forum analysis has been the constitutional sticking point in our prior decisions." *Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 694 (2010). The Court's finding that the policy at issue in *Martinez* was "textbook viewpoint neutral" on its face and that any differential impact on student groups expressing different views was merely incidental, *id.* at 694–96, does nothing to alter the absolute requirement of viewpoint neutrality. *Hazelwood School District v. Kuhlmeier*, in turn, was not a public forum case at all, but rather a case about a public school's authority over its own curricular activities. 484

4

U.S. 260, 268 (1988). Even then, the policy at issue was also viewpoint neutral, providing that the school would "not restrict free expression or diverse viewpoints within the rules of responsible journalism." *Id.* at 269. Neither case displaces the rule that any speech restrictions in limited public fora must be viewpoint neutral.[3]

Turning to reasonableness, the government mistakenly argues that removal of Plaintiffs' articles from PSNet is reasonable because Plaintiffs may be able to republish their work elsewhere. Doc. No. 33 at 23–24. Courts have repeatedly held to the contrary, finding speech restrictions in limited public fora to violate the First Amendment even when alternative private fora abound. *See, e.g., Shurtleff v. City of Bos.*, 596 U.S. 243 (2022) (flagpole); *Ridley*, 390 F.3d 65 (MBTA advertisements). The government relies on *Perry Education Association v. Perry Local Educators' Association*, but the Court looked to the presence of other *limited public fora*—such as school bulletin boards and school facilities—and only after concluding that there was "no indication that the school board intended to discourage one viewpoint and advance another." 460 U.S. 37, 49 (1983).

The government seeks to recast the reasonableness test, averring that "Defendants acted reasonably" in interpreting and implementing the EO and OPM Memo. Doc. No. 33 at 22. But the reasonableness of a speech restriction in a limited public forum "must be assessed in the light of the purpose of the forum," not in the light of the overarching directive. *Cornelius*, 473 U.S. at 809. Removing peer-reviewed patient safety research from PSNet advances only the government's viewpoint discrimination, not the patient-safety purpose of the forum. Doc. No. 26 at 17–20.

---

[3] The government also cites an out-of-circuit case where the plaintiffs did not even claim viewpoint discrimination. *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 382 n.17 (5th Cir. 1989).

B.        **Defendants' Implementation of the EO Violates the APA**

1.        **Defendants' Implementing Actions Are Final Agency Actions**

Defendants are wrong to claim that neither the OPM Memo nor AHRQ's removal of articles from PSNet is a final action, and that the OPM Memo is not agency action at all.[4]

Numerous courts have already rightly rejected Defendants' argument that OPM memoranda directing agencies to take action, including the specific OPM Memo here, are not "final agency action." *See Drs. for Am. v. Off. of Pers. Mgmt.*, 2025 WL 452707, at *6 (D.D.C. Feb. 11, 2025) (finding same OPM memo to be final agency action); s*ee also Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, 2025 WL 996542, at *16–17 (S.D.N.Y. Apr. 3, 2025) (OPM memo was final agency action); *Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, 2025 WL 820782, at *6 (N.D. Cal. Mar. 14, 2025) (same).[5] "[A]gency action" under the APA "is 'meant to cover comprehensively every manner in which an agency may exercise its power.'" *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001)). The OPM Memo—which directed other agencies to take specific action within two days and to report to OPM on their compliance, Doc. No. 26-1 ¶ 18 & Ex. 17—is clearly an "order," which includes "virtually any authoritative agency action other than a rule." *N.Y. Stock Exch. LLC v. SEC*, 2 F.4th 989, 992 (D.C. Cir. 2021). That the OPM Memo was "entitled 'Initial Guidance'" does not alter its finality for APA purposes. Doc. No. 33 at 25. "[C]ourts consider whether the practical effects of an agency's decision make it a final agency action, *regardless of how it is labeled*." *Columbia Riverkeeper v. U.S. Coast*

---

[4] Defendants do not dispute that AHRQ's removal of articles from PSNet is agency action.

[5] Defendants cite to *Association of Administrative Law Judges v. U.S. Office of Personnel Management*, 640 F. Supp. 2d 66 (D.D.C. 2009), but the agency action there—a "notice" that OPM "planned to post [a job] vacancy announcement 'within the next few days'"—was different. *Id.* at 73. It "was an anticipatory step, indicating OPM's plans to publish a vacancy announcement, and not the final step in a decision-making process." *Id*. Here, by contrast, the OPM Memo was the final step: it directed other agencies to take specific actions within a specific timeframe.

*Guard*, 761 F.3d 1084, 1094–95 (9th Cir. 2014) (emphasis added). Here, the OPM Memo both consummated OPM's implementation of the Gender Ideology EO and determined Plaintiffs' rights, thus rendering it a final action. *See* Doc. No. 26 at 20–21.

AHRQ's removal of articles was also final agency action. That Plaintiffs' "articles were not completely deleted from PSNet but instead put into an archive, to allow for the possibility of re-posting," Doc. No. 33 at 25, "does not mean that the agency's prior removal decision was not the consummation of an agency's decisionmaking process," *Drs. for Am.*, 2025 WL 452707, at *6 (citing, *inter alia*, *Sackett v. EPA*, 566 U.S. 120, 127 (2012)).[6] Nor does it matter that "no agreement on alternative language could be reached," Doc. No. 33 at 25, as AHRQ removed Plaintiffs' articles because Plaintiffs refused to agree to the "non-negotiable" condition of removing words and terms associated with a viewpoint disfavored by the government, Doc. No. 26-3 ¶ 38 & Ex. 9; *see also* Doc. No. 26 at 21–22.

### 2. Defendants' Implementing Actions Are Arbitrary and Capricious

Defendants claim that "OPM and AHRQ acted within the bounds of reason" because they were merely implementing the EO. Doc. No. 33 at 25–26. In so doing, they fail to grapple with any of the points Plaintiffs raised in their opening brief, Doc No. 26 at 22–23, including that "[a] decision supported by no reasoning whatsoever in the record cannot be saved merely because it involves an Executive Order," *Louisiana v. Biden*, 543 F. Supp. 3d 388, 414 (W.D. La. 2021), *vacated and remanded on other grounds*, 45 F.4th 841 (5th Cir. 2022); departure from longstanding precedent requires a good explanation, *see FCC v. Fox Television Stations, Inc.*, 556

---

[6] It is also worth noting that Defendants simultaneously assert that "[a]s a practical matter, PSNet is unable to . . . restor[e] Plaintiffs' articles." Doc. No. 33 at 2. While Plaintiffs disagree with this contention as a factual matter, *see supra* Section I.A., Defendants cannot have it both ways. It is hard to imagine an action more final than one that cannot be undone.

U.S. 502, 515 (2009); and, even if Defendants could simply rely on the underlying EO, the EO fails to provide any satisfactory explanation for the agencies' actions, *see* Doc. No. 26 at 23–24.[7]

### 3. The OPM Takedown Directive Exceeds OPM's Statutory Authority

Defendants similarly do not address Plaintiffs' argument that OPM exceeded its statutory authority under 5 U.S.C. §§ 1103(a)(1) and (5). *See* Doc. No. 26 at 26–27. Instead, Defendants seek shelter in the OPM Memo's "initial guidance" label, Doc. No. 33 at 26, which fails for the same reasons Defendants' argument that the Memo is not "final agency action" fails, Doc. No. 26 at 20–22. It also ignores the plain text of the Memo, which specifically invokes OPM's statutory authority and directs action thereunder within specific timeframes. Doc. No. 26-1 ¶ 18 & Ex. 17. Moreover, HHS itself interpreted the OPM Memo as a command, issuing its own memo explaining that "[a]ll HHS Operating and Staff Divisions are *expected to comply with* [the EO] and OPM guidance by taking prompt actions to end all agency programs that use taxpayer money to promote or reflect gender ideology." Doc. No. 33-4 at 2 (emphasis added). The same day, an HHS official sent an email to HHS staff alerting them to the OPM Memo and stating that "HHS and divisions are acting accordingly *to execute*." Second Langford Decl. ¶ 3 & Ex. 19 (emphasis added).

## III. ABSENT A PRELIMINARY INJUNCTION, PLAINTIFFS WILL SUFFER IRREPARABLE HARM

The government's argument that plaintiffs have not proven a sufficiently material injury to constitute irreparable harm misapprehends the law. *See* Doc. No. 33 at 16–20. Where "[P]laintiffs have made a strong showing of likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied

---

[7] Defendants also fail to address Plaintiffs' argument that OPM and AHRQ's implementing actions "entirely failed to consider . . . important aspect[s] of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), by undermining patient safety as well as the safety of LGBTQ patients specifically, *see* Doc. No. 26 at 24–25.

as well," *Fortuño*, 699 F.3d at 15, for "[i]t is well established that the loss of first amendment freedoms constitutes irreparable injury," *Maceira v. Pagan*, 649 F.2d 8, 18 (1st Cir. 1981) (citing *Elrod*, 427 U.S. at 373). The government does not contest that Plaintiffs' First Amendment rights are at stake and offers no real argument that those rights have not been violated. The violation of Plaintiffs' First Amendment rights alone conclusively establishes irreparable harm.

## IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION

The balance of equities and public interest factors merge when the government opposes the injunction, *Nken v. Holder*, 556 U.S. 418, 435–36 (2009), and weigh in favor of a preliminary injunction here. "The 'loss of First Amendment freedoms' . . . . tilts the balance of equities in [Plaintiffs'] favor . . . as a doctrinal matter." *Brox v. Woods Hole*, 706 F. Supp. 3d 151, 161 (D. Mass. 2023) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)). That loss not only harms Plaintiffs but also has "the concomitant effect of depriving 'the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration.'" *Fortuño*, 699 F.3d at 15–16 (quoting *Citizens United v. FEC*, 558 U.S. 310, 341 (2010)).

Notably, Defendants do not argue that the OPM takedown directive and AHRQ's removal of articles serve *any* government (or public) interest; they contend only that imposing the injunction will tax Defendants' resources and force their staff to discern how to republish articles. Defendants fail to cite to, or offer, any evidence to support these assertions, see Doc. No. 33 at 27, and they undercut them by admitting that the articles "were not completely deleted from PSNet but instead put into an archive, to allow for the possibility of re-posting if future circumstances warranted," *id.* at 25. "It cannot be said that such conjectural harms outweigh concrete harms to the . . . constitutionally protected right . . . ." *Asociación de Educación Privada de P.R., Inc. v. García-Padilla*, 490 F.3d 1, 21 (1st Cir. 2007).

9

## V. THIS COURT SHOULD NOT LIMIT THE SCOPE OF ANY INJUNCTIVE RELIEF TO PLAINTIFFS

There is no reason to limit any injunction to Plaintiffs, for a preliminary injunction may "reach beyond the particular circumstances of [the] plaintiffs" if they satisfy the standard for a facial challenge "to the extent of that reach," as Plaintiffs have done here. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010); *accord Project Veritas Action Fund*, 982 F.3d at 826. Plaintiffs challenge the constitutionality of OPM's takedown directive to the extent it reaches private speech on government-run forums and challenge AHRQ's policy implementing the OPM Memo and the EO. For the reasons presented in Plaintiffs' opening brief, Doc. No. 26 at 14–17, the very essence of these policies is viewpoint discrimination, and thus *all* of their applications are unconstitutional. This demonstration not only meets, but exceeds, the standard for facial relief under the First Amendment, which requires only that a "substantial number" of a policy's applications are unconstitutional, "judged in relation to [the policy's] plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The First Circuit regularly affirms injunctions against such unconstitutional policies on their face, not limited only to the plaintiffs. *See, e.g.*, *Fortuño*, 699 F.3d at 16 (directing district court to preliminarily enjoin unconstitutional provisions of Puerto Rico statute, not limited to plaintiffs); *Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d 607, 617 (1st Cir. 2021) (affirming preliminary injunction delaying enforcement of entire chapter of state law on its face on First Amendment grounds, not limited to plaintiffs). It is also within the Court's power under the APA to issue universal relief, including at this stage. *See Texas v. United States*, 809 F.3d 134, 188, 188 n.211 (5th Cir. 2015) (collecting cases), *aff'd*, 579 U.S. 547, 547 (2016).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant their request for a preliminary injunction and order the relief requested in their proposed order.

10

Dated: April 22, 2025                              Respectfully submitted,

/s/ Scarlet Kim
Scarlet Kim*
Vera Eidelman*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
scarletk@aclu.org
veidelman@aclu.org

Jessie J. Rossman (BBO # 670685)
Rachel E. Davidson (BBO # 707084)
Zoe Kreitenberg (BBO # 715356)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 801
Boston, MA 02018
617-482-3170
jrossman@aclum.org
rdavidson@aclum.org
zkreitenberg@aclum.org

Jessica Lin**
Bryce Morales**
Ben Menke**
John Langford*
David Schulz*
MEDIA FREEDOM & INFORMATION
    ACCESS CLINIC
Abrams Institute
Yale Law School
P.O. Box 208215
New Haven, CT 06520-8215
jessica.lin@ylsclinics.org
bryce.morales@ylsclinics.org
ben.menke@ylsclinics.org
john.langford@ylsclinics.org
david.schulz@ylsclinics.org


* Admitted *pro hac vice*
**Student practice

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 22, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

*/s/ Scarlet Kim*
Scarlet Kim